UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILE DIVISION

| | |
|---|---|
| FAYE R. HOBSON,<br><br>    Plaintiff,<br><br>v.<br><br>ASHTON CARTER, Secretary of Defense,<br><br>    Defendant. | Case No. 3:14-cv-01540<br><br>Judge Trauger<br>Magistrate Judge Newbern |

To:   The Honorable Aleta Trauger

**REPORT AND RECOMMENDATION**

By Order entered August 5, 2014, the District Court referred this action to the Magistrate Judge under 28 U.S.C. § 636(b)(1) for report and recommendation on all dispositive motions. (Doc. No. 3.) Pending before the Court is Defendant Ashton Carter's[1] Motion for Summary Judgment (Doc. No. 95.) For the reasons stated below, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED.

**I.   Factual Background**

Plaintiff Faye Hobson is a teacher who began working in schools[2] run by the Department of Defense (Department) in August 2002. (Doc. No. 103, PageID# 833.) She has repeatedly sought employment at Department schools located in Fort Campbell, Kentucky, with no success. (*Id.* at 833–34; Doc. No. 16-4, PageID# 74, 81, 85.) Motivated in part by her unsuccessful applications

---

[1]   As Defendant's recent filings reflect, Aston Carter replaced Chuck Hagel as Secretary of Defense after this action was filed.

[2]   The Department operates two sets of schools for the children of military personnel: Department of Defense Domestic Dependent Elementary and Secondary Schools, and Department of Defense Schools, which are located overseas. (Doc. No. 97, PageID# 774.)

1

for employment at Fort Campbell schools, Hobson has filed numerous complaints against the Department since 2005, including one informal and five formal Equal Employment Opportunity (EEO) complaints filed with the Diversity Management and Equal Opportunity Office of the Department of Defense Education Activity (DoDEA) and a civil lawsuit that was settled in 2012. (Doc. No. 103, PageID# 834; Doc. No. 16-6, PageID# 116; Doc. No. 16-12, PageID# 133.) She has also spoken about the Department through speech she characterizes as "whistleblower disclosure, letters to Congress . . . letters to [the] Office of Special Counsel [and] serving as a witness for other EEO complainants." (Doc. No. 103, PageID# 834.)

On June 28, 2013, Fort Campbell High School announced an opening for a Language Arts Reading Specialist (LARS) position under Request for Personnel Action (RPA) number 13Jun7XHEKY012377. (Doc. No. 103-1, PageID# 892; Doc. No. 16-5, PageID# 97.) Hobson was referred for consideration for this position through the Employment Application System (EAS), a tool used to fill teacher vacancies in stateside Department of Defense schools. (Doc. No. 103-1, PageID# 892; Doc. No. 65, PageID# 97; Doc. No. 97 PageID# 774.) EAS does not advertise and accept applications for specific vacancies; rather, candidates answer a series of questions regarding their qualifications and identify specific teaching categories and geographic locations for which they wish to be considered. (Doc. No. 97, PageID# 774.) Candidates are then referred through EAS for consideration when positions matching their qualifications and teaching and geographic preferences arise. (*Id.* at PageID# 775.)

After being referred for consideration, Hobson interviewed for the LARS position with Fort Campbell High School Principal Mohan Vaswani, Assistant Principal Demetrius Thomas, and English Department Chair Wendy Thomas. (Doc. No. 103-1, PageID# 898.) Before completing the last interviews for the LARS position, Vaswani emailed Leslie McNair, the Human

Resources Specialist who prepared the referral list for the position, to inform her that "[he has] now discovered that the person has to have [a] Secondary English [certification] for the position we have available." (Doc. No. 103-1, PageID# 922.) Vaswani noted that some of the candidates he interviewed did not have this certification. (*Id.*) McNair responded that, if the vacant position was a Secondary English position and not a LARS position, Vaswani would need to return the LARS referral list with a notation that none of the candidates was selected. (*Id.*) McNair would then cancel the LARS RPA and the school would have to submit a new request for candidates to fill a Secondary English position. (*Id.*)

Following this instruction, Fort Campbell High School returned the referral list for the LARS position noting that no candidate had been selected and submitted a request for a Secondary English position, RPA number 13Jun7XHEKY015490. (Doc. No. 103-1, PageID# 925; Doc. No. 16-8; Doc. No. 16-5, PageID# 101.) Hobson was again referred as a candidate for this Secondary English position. (Doc. No. 96-1, PageID# 744.) She was personally invited to interview by Assistant Principal Thomas, who contacted her by telephone and by email regarding the reposted position. (*Id*. at PageID# 742.) Hobson interviewed for the position with Assistant Principal Thomas and Wendy Thomas. (Doc. No. 103-1, PageID# 898.) Ultimately, Assistant Principal Thomas selected another candidate, Dr. Bonnie Cameron, to fill the Secondary English position. (Doc. No. 96-1, PageID# 746.)

Shortly thereafter, Fort Campbell High School submitted a third RPA, number 13Jul7XHEKY019211, for an English with Advanced Placement English Literature & Composition opening (AP English position). (Doc. No. 96-1, PageID# 738.) Hobson, who did not have AP English certification, was not referred for this position. (Doc. No. 96-1, PageID# 738–

3

41, 756, 758; Doc. No. 100, PageID# 795.) In the end, Fort Campbell High School did not fill the AP English position. (Doc. No. 103-1, PageID# 894; Doc. No. 16-2, PageID# 137.)

On September 15, 2013, Hobson filed a Complaint of Discrimination in the Federal Government (EEO Complaint) with the Department. (Doc. No. 103-1, PageID# 910–12.) In her complaint, Hobson questioned several aspects of her interactions with Fort Campbell High School. (*Id*. at PageID# 911–12.) She noted the cancellation of the LARS position and relisting of the Secondary English position, which she termed a "red flag," and alleged that other candidates received different information about the Secondary English position than she did. (*Id*. at PageID# 911.) As relief for her complaint, Hobson requested, among other things, the candidate referral lists for the LARS and AP English positions and an explanation of why the LARS posting was cancelled. (*Id*. at PageID# 912.)

The Investigations and Resolutions Directorate of the Defense Civilian Personnel Advisory Service investigated Hobson's complaint and issued a report[3] dated March 7, 2014. (Doc. No. 103-1, PageID# 917; Doc. No. 16-6.) The Report of Investigation notes that Hobson "discusses three different positions throughout her testimony, which include [the LARS position, the Secondary English position, and the AP English position]." (Doc. No. 16-6, PageID# 115.) However, the Report states that the AP English position was the only position "accepted as a 'non-referral' and is the only position accepted for investigation." (*Id*. at PageID# 115 n.2.)

---

[3] Defendant raised Hobson's failure to exhaust her administrative remedies in his Partial Motion to Dismiss (Doc. No. 15), which the District Court treated as a Partial Motion for Summary Judgment. (Doc. No. 31, PageID# 299.) Defendant raises this issue again in the instant Motion for Summary Judgment (Doc. No. 96, PageID# 731), and the Court accordingly references the Report of Investigation and Final Agency Decision, which are exhibits to the earlier filing. (Doc. Nos. 16-6, 16-12.)

4

The Department's Final Agency Decision, based on the Report of Investigation, again only considers Hobson's non-selection for the AP English position. (Doc. No. 103-1, PageID# 918; Doc. No. 16-12, PageID# 133, 135.) It states that "[t]he two officials most intimately involved in the hiring process for teachers" at Fort Campbell High School "were aware of [Hobson's] race, sex, age, and prior EEO activity due to [her] filing of an earlier complaint against FCHS." (Doc. No. 16-12, PageID# 137.) It further states that Hobson acknowledged she did not have AP certification but also indicates that the record showed at least one candidate without AP certification was referred for the position. (*Id*. at PageID# 137–38.) It states: "[T]he record shows that one candidate who was on the list who lacked AP qualifications was told that the requirements for an AP position were strict, but that waiver of the AP requirement might be possible." (*Id*.) However, it also notes that Hobson "failed to produce evidence, other than her speculation, to support her contention that an improper employer motive created this situation." (*Id*. at PageID# 137.) Finally, it states that, after no candidate was hired from the original AP English referral list, a second list of candidates for the position was created without the AP certification requirement. (*Id*. at PageID# 137 n.2.) Hobson was included as a candidate on that list but not selected for the position. (*Id*.) On these facts, the Department concluded that Hobson was not unlawfully discriminated against "based on her race, sex, age, or in reprisal for prior EEO activity." (*Id*. at PageID# 138.)

Hobson then filed this civil action. (Doc. No. 1.) Hobson's Complaint alleges that she "is a black female who is engaged in protected activity by filing a Civil Law Suit settled on April 20, 2012, and several Formal EEO Complaints;" that she has "applied for more than 22 positions at Fort Campbell High School with a non-selection;" and that this is discrimination in violation of Title VII. (Doc. No. 1, PageID# 2–4.) In response to Defendant's earlier motion (Doc. No. 14), the

District Court granted summary judgment to Defendant as to Hobson's claims of discrimination with regard to all non-selections except Hobson's "claims of discrimination with regard to her non-selection for the LARS position and the AP position." (Doc. No. 31, PageID# 299.)

On September 29, 2016, Defendant filed the instant Motion for Summary Judgment, accompanied by a Memorandum of Support; the Declaration of Gordon Harmon, Supervisory Human Resources Specialist and Chief of the Educator Staffing Branch for the Department of Defense Domestic Dependent Elementary and Secondary Schools; and a Statement of Material Undisputed Facts. (Doc. Nos. 95–98.) On October 4, 2016, Hobson filed an Opposition to Defendants' Motion for Summary Judgment and Motion to Strike and Memorandum in support thereof; a Rebuttal to the Declaration of Gordon Harmon; and an Opposition to Defendants' Statement of Material Undisputed Facts. (Doc. Nos. 100–103.) On October 17, 2016, Carter filed a Reply and a Reply to Hobson's Response to his Statement of Undisputed Material Facts. (Doc. Nos. 108–10.) On October 26, 2016, Hobson filed three sur-replies. (Doc. Nos. 111–13.)

## II.  Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, the moving party must prove the absence of a genuine issue of material fact as to any essential element of the opposing party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 847 (6th Cir. 2016). In determining whether the moving party has met its burden, a court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stiles*, 819 F.3d at 848. A court must not weigh the evidence and determine the

truth of the matters asserted but instead must "determine whether there is a genuine issue for trial." *Jackson v. VHS Detroit Receiving Hosp. Inc.*, 814 F.3d 769, 775 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to judgment as a matter of law. *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (citation omitted). To preclude summary judgment, the nonmoving party must go beyond the pleadings and present specific facts demonstrating the existence of a genuine issue for trial. *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014). "A mere scintilla of evidence by the nonmoving party is insufficient to defeat summary judgment; 'there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *St. Clair Marine Salvage, Inc. v. Bulgarelli*, 796 F.3d 569, 574 n.2 (6th Cir. 2015) (quoting *Anderson,* 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment may be granted. *Anderson,* 477 U.S. at 249–52.

**III. Conclusions of Law**

The Sixth Circuit has held that, to establish a prima facie claim of retaliation under Title VII, a plaintiff must prove the following:

> (1) she engaged in activity protected by Title VII; (2) the defendant knew of her exercise of her protected rights; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action[.]

*Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516–17 (6th Cir. 2009). If a plaintiff establishes a prima facie claim of retaliation, the court then applies the burden-shifting analysis laid out in *McDonnell*

7

*Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which the burden shifts first to the defendant to articulate a non-discriminatory reason for the adverse employment action, then back to the plaintiff to show, by a preponderance of the evidence, that the proffered reason is mere pretext for retaliatory motive. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674–75 (6th Cir. 2013), *rev'd on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013).

It is uncontested that Hobson filed multiple EEO complaints and a civil lawsuit of which the decision makers involved in the subject employment decisions were aware. (Doc. No. 103-1, PageID# 892, 956, 1016.) This establishes the first and second elements of her prima facie case. *See DiCarlo v. Potter*, 358 F.3d 408, 420–21 (6th Cir. 2004), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). Thus, the remaining analysis will focus on whether Defendant took an adverse employment action against Hobson with respect to each position and, if so, whether that action was causally connected to her prior protected activity, proceeding as necessary to Defendant's articulated non-discriminatory reason and Hobson's showing of pretext.

### A. The LARS Position

Hobson argues that Fort Campbell High School cancelled the LARS position in retaliation for her protected conduct. Defendant counters that it cancelled the LARS position because it was mistakenly categorized and reposted a correctly titled position and that doing so is not a materially adverse employment action.

"Whether a[n action] is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006) (citations and internal quotation marks omitted). The determining factor is whether

the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (citations and internal quotation marks omitted).

Here, Assistant Principal Thomas simultaneously informed Hobson that the LARS position was being cancelled and invited her to interview for the replacement Secondary English position. (*See* Doc. 96-1, PageID# 742.) While this change may have concerned Hobson as some kind of procedural irregularity, (Doc. No. 103-1, PageID# 911), she has offered no evidence that it harmed her in any way. Hobson lost nothing in the LARS position's closure; she retained the opportunity to interview for the same position, now accurately categorized as Secondary English. There was no adverse employment action, and Defendant is entitled to summary judgment on this claim.

### B. The Secondary English Position

While Hobson does not squarely argue that Dr. Bonnie Cameron's hiring for the Secondary English position was a discriminatory act against her, she does include allegations and arguments in her filings that could be so construed. To the extent that Hobson does intend to assert such a claim, however, it cannot survive summary judgment.

#### i. Administrative Exhaustion

As a threshold matter, Defendant argues that this Court lacks jurisdiction over Hobson's claim regarding her non-selection for the Secondary English position because the administrative investigation and Final Agency Decision addressed only the AP English position. (Doc. No. 96, PageID# 728, 731.) Defendant made this argument in his Motion to Dismiss (Doc. No. 15.) That Motion was treated as a motion for summary judgment and rejected by the District Court with regard to Hobson's non-selection for the LARS and AP English position on grounds that Hobson could reasonably expect that her allegations regarding those positions would be included in the scope of the Department's investigation. (Doc. No. 31, PageID# 299.) Accordingly, to the extent

Hobson's claims regarding the LARS position include her allegations about irregularities in hiring for the Secondary English position, those claims have been found to be properly before the Court.[4]

Thus, Hobson has exhausted her administrative remedies and jurisdiction over this claim is established.

### ii. Merits

Defendant does not appear to argue that Hobson has failed to establish a prima facie case of retaliation with regard to the Secondary English position. (*See* Doc. No. 96, PageID# 731). Instead, Defendant offers a non-discriminatory reason why Hobson was not hired: Dr. Bonnie Cameron was a more qualified candidate. (*Id.*) According to Assistant Principal Thomas, Cameron demonstrated more knowledge, skills, and abilities for the position and had a higher level of education and more teaching experience in the subject area than Hobson. (Doc. No. 103-1, PageID# 899–900.)

Hobson, who has the ultimate burden of persuasion, can establish that this explanation is pretextual in three ways: "by showing that the [employer's] proffered reason [for the adverse action] (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct,

---

[4] A Title VII judicial complaint may not extend beyond "the scope of the [EEO] investigation reasonably expected to grow out of the charge of discrimination." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (quoting *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002)). Although the Report of Investigation deals directly only with the AP English position, the investigator noted that Hobson's complaint and investigation testimony included the LARS position and the Secondary English position as well. (Doc. No. 16-6, PageID# 115 n.2.) In her EEO complaint, Hobson cited irregularities with regard to the interview and notification processes for the LARS and Secondary English positions, noted her non-selection, and made a general plea that "the [r]etaliatory actions STOP." (Doc. No. 103-1, PageID# 906–07.) Though Hobson did not use the correct RPA numbers in her complaint, her allegations referred to the LARS and Secondary English position hiring process. (*Id.*) Hobson therefore could have reasonably expected that her allegations about the LARS and Secondary English positions would be part of the subsequent investigation, and the investigator did elicit information related to the LARS and Secondary English hiring process as part of the investigation into Hobson's complaint. (*Id.* at 892–93, 895, 897–98.)

or (3) was insufficient to warrant the challenged conduct." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779 (6th Cir. 2016) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). Hobson states that she (Hobson) "holds 26 [Department] current certificates" and "has 11 years of experience teaching military dependents, on military bases and 8 years include teaching Secondary English courses." (Doc. No. 103, PageID# 840.) Though neither Hobson nor Carter has provided proof of Cameron's actual credentials, the referral and selection list for the position reflects that Hobson received a rating of 27, with her competencies listed as 17, while Cameron had a rating of 73 and competencies of 12. (Doc. No. 96-1, PageID# 743–44.) The administrative investigation described Cameron as "[a]n African-American female, 6 years older than [Hobson] and with more education and experience than she[.]" (Doc. No. 103-1, PageID# 903.) In addition, the Department determined that Cameron was qualified to teach Secondary English. (Doc. No. 96-2, PageID# 772.) Hobson alleges that Cameron lacked a valid teaching certificate at the time of hire (an allegation she attributes to a statement "from the mouth of Dr. Bonnie Cameron"), but she does not dispute that Cameron held a higher degree. (*See* Doc. No. 103, PageID# 835, 838, 840.)

Hobson's "subjective belief that [s]he was more qualified . . . is insufficient to demonstrate pretext." *Plumb v. Potter*, 212 F. App'x 472, 480 (6th Cir. 2007) (citing *Briggs v. Potter*, 463 F.3d 507, 516–17 (6th Cir. 2006)). In *Briggs v. Potter*, the plaintiff argued that he was more qualified than the person selected for a job because he had worked for the employer longer and submitted superior application essays. 463 F.3d at 516. The employer responded that the person selected was a better fit because of her greater education and experience and better interview. *Id.* The court found that the plaintiff's "subjective view of [his] qualifications in relation to those of the other applicants, without more, cannot sustain a claim of discrimination." *Id.* (quoting *Hedrick v. W.*

*Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004)); *see also Braithwaite v. Dep't of Homeland Sec.*, 473 F. App'x 405, 412 (6th Cir. 2012) (holding that plaintiff's assertions that he had an "outstanding resume" and "extensive experience in law enforcement" did not establish pretext). Hobson, like the plaintiff in *Briggs*, "has not produced evidence such that a reasonable jury could conclude that the [employer's] proffered reasons" for hiring Cameron constituted pretext. *Id.* at 516–17. Accordingly, Defendant is entitled to summary judgment on any claims regarding Hobson's non-selection for the Secondary English position.

### C. The AP English Position

Hobson argues that Defendant retaliated against her by not referring her for consideration for the AP English position on grounds that at least one referred candidate, like Hobson, lacked AP teaching experience—Defendant's stated reason for Hobsons non-referral. The Department responds that Hobson's non-referral was neither a materially adverse action nor causally connected to her protected activity.

A failure to hire can qualify as an adverse employment action for purposes of a retaliation claim where: "(1) the [plaintiff] applied for a particular position (2) which was vacant and (3) for which she was qualified." *Thompson v. Austin Peay State Univ.*, No. 3:11-cv-00177, 2012 WL 3682914, at *15 (M.D. Tenn. Aug. 24, 2012) (quoting *Velez v. Janssen Ortho, LLC*, 467 F.3d 802, 803 (1st Cir. 2006)); *see Williams v. Nashville Network*, 132 F.3d 1123, 1131–32 (6th Cir. 1997) (treating a failure to hire as an adverse employment action). Hobson agrees that she did not hold AP English certification, but states she was qualified for the AP English position because another non-certified candidate was referred for consideration and because Assistant Principal Thomas indicated to at least one applicant that certification was not an ironclad requirement of the position.

(*See* Doc. No. 103, PageID# 835–37.) Taking the facts in the light most favorable to her position, Hobson has shown that her non-referral constitutes an adverse action.

However, Hobson cannot establish a causal connection between her protected activity and the non-referral. To make this showing, a plaintiff must demonstrate "her protected activity was a but-for cause of the alleged adverse action by the employer." *Nassar*, 133 S. Ct. at 2534. The Sixth Circuit has held that, "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity," this temporal proximity suffices to satisfy a *prima facie* case; however, "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). In this case, Leslie McNair, the Human Resources Specialist who prepared the referral list for the AP English position, learned about Hobson's EEO complaints in April 2010 and November 2012, respectively. (Doc. No. 97, PageID# 776; Doc. No 16-5, PageID# 95). McNair referred candidates for the AP English position on or around July 22, 2013. (Doc. No. 96-1.) Thus, Hobson has not shown temporal proximity that is "acutely near in time" or immediate. *See id.* at 524. She therefore must produce other evidence of retaliatory motive in order to establish causation. Hobson, however, relies solely on temporal proximity. (*See* Doc. No. 103, PageID# 839, 841.) Her prima facie case therefore fails.

Even assuming that Hobson could complete her prima facie case, she cannot establish that Defendant's non-discriminatory reason for not referring her for consideration was pretextual. *See Fuhr*, 710 F.3d at 675. Defendant asserts that Hobson was not referred because she lacked the required AP certification. (Doc. No. 96, PageID# 734.) Hobson does not dispute that she lacked this certification. (Doc. No. 96-1, PageID# 756.) She argues instead that, because another

candidate without AP certification was referred for the position and because Assistant Principal Thomas told some candidates the AP certification requirement could be waived, her lack of certification did not actually motivate her non-referral. *See Jackson*, 814 F. at 779. Hobson provides no evidence to support this argument beyond her own assertions. "Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment" *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008). Defendant's position that it was not motivated by retaliatory animus towards Hobson is further buttressed by the fact that, when the AP certification requirement for this position was removed, Hobson was referred for consideration. (Doc. No. 103-1, PageID# 894, 1012; Doc. No. 16-12, PageID# 137.)

Hobson has not presented evidence from which a reasonable jury could find Defendant's stated reason for her non-referral to be pretextual. *See Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Defendant is also entitled to summary judgment on this claim.

**IV.     Recommendation**

In light of the foregoing, the Magistrate Judge RECOMMENDS that Defendant's Motion for Summary Judgment (Doc. No. 95) be GRANTED.

Any party has fourteen (14) days from the receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

                                                                            _____
                                                                            ALISTAIR E. NEWBERN
                                                                            United States Magistrate Judge