**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **FAYE R. HOBSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:14-cv-01540** |
| ) | **Judge Aleta A. Trauger** |
| **RETIRED GENERAL JAMES MATTIS,** ) | |
| **Secretary, Department of Veterans** ) | |
| **Affairs,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM

Before the court are the plaintiff's Written Objections (Doc. No. 122) to the magistrate judge's December 14, 2016 Report and Recommendation ("R&R"), recommending that the defendant's Motion for Summary Judgment (Doc. No. 95) be granted and this action dismissed.

For the reasons discussed herein, the court will reject in part and accept in part the magistrate judge's recommendations, and grant in part and deny in part the defendant's Motion for Summary Judgment.

## I.      Standard of Review

When a party files objections to a magistrate judge's report and recommendation regarding a dispositive motion, the district court must review *de novo* any portion of the report and recommendation to which objections are properly lodged. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B) & (C). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

**II.     Material Undisputed Facts**

The facts set forth herein are undisputed or viewed in the light most favorable to the plaintiff, unless otherwise noted.

The Department of Defense ("DoD") operates two separate sets of schools for the children of military personnel: DoD Domestic Dependent Elementary and Secondary Schools ("DDESS"), also known as DoD state-side or domestic schools, and the Department of Defense overseas schools ("DoDDS"). (Pl.'s Resp. to Def.'s Statement of Undisp. Facts ¶ 1, Doc. No. 101.) Both DDESS and DoDDS are under the aegis of the Department of Defense Education Activity ("DoDEA"), based in Alexandria, Virginia.

One of the recruitment tools used by the DoDEA to hire professional educators to fill teaching vacancies at DDESS schools is the Employment Application System ("EAS"). (*Id.* ¶ 7.) EAS is an electronic database that allows interested candidates to submit a single application for multiple available positions. Candidates create, modify, submit, and track on-line applications and supporting documentation (i.e., transcripts, teaching licenses, certificates, veterans' preference forms, military spouse preference forms, etc.) necessary for the applicant to be considered for teaching vacancies. (*Id.* ¶ 8.) Under EAS, an applicant fills out an on-line form, answering questions about her qualifications and identifying the geographic regions and teaching positions (e.g., "Teacher, Grades 10–12," "Teacher, Music") in which she is interested. (*Id.* ¶ 9.) Once a Human Resources Assistant processes a candidate's supporting documentation and updates the applicant's EAS application, the candidate's application is placed in an "active" status. (*Id.* ¶ 11.) After that step, applicants will automatically be considered—or referred—for any vacant positions in the geographic regions in which they indicated interest and whose

qualifications they meet. (*Id.* ¶¶ 9,[1] 11; Harmon Decl. ¶ 12, Doc. No. 97.)

Plaintiff Faye Hobson is a teacher who has been working in DoDEA schools, primarily overseas, since August 2002. (Pl.'s Jan. 3, 2014 Agency Decl., Doc. No. 16-4, at 2.) Through EAS, she has repeatedly sought employment at DDESS schools located at Fort Campbell, Kentucky, without success. (Verified Compl. ¶¶ 11, 15, Doc. No. 1.) Based in part on her unsuccessful applications, she has filed numerous complaints against the DoD since 2005, including at least one informal and five formal Equal Employment Opportunity ("EEO") complaints with the Diversity Management and EEO Office of the DoDEA. The plaintiff also has filed one prior civil lawsuit, which settled in April 2012. (Doc. No. 1 ¶ 6.)

On June 18, 2013, Fort Campbell High School ("FCHS"), in Fort Campbell, Kentucky, announced an opening for a 0413 Language Arts Reading Specialist ("LARS") position, for School Year 2013–2014, under Request for Personnel Action number 13Jun7XHEKY012377 ("RPA 12377"). (Doc. No. 101 ¶ 15.) The plaintiff, who was qualified to teach LARS and wanted to return to Kentucky to teach, received a system-generated notification from EAS that she had been referred for consideration as a qualified candidate for the LARS position. (*Id.* ¶ 17; Doc. No. 96-1, at 15.) On June 19, she received an email asking her to call to schedule an interview. (Doc. No. 96-1, at 16.) She subsequently interviewed for the LARS position with FCHS Principal Mohan Vaswani, Assistant Principal Demetrius Thomas, and English Department Chair Wendy Thomas. (Doc. No. 101 ¶ 19; Doc. No. 16-4, at 8.)

On June 24, 2013, Vaswani contacted HR Specialist Leslie McNair via email, informing

---

[1] The plaintiff purports to dispute this statement. In her response to the defendant's Statement of Undisputed Fact ¶ 9, she states: "The applicant is not always considered for any/all vacancies for that type of teaching position at the geographic location." (Doc. No. 101 ¶ 9.) Her statement is not supported by any citation to the record and apparently relies wholly upon the plaintiff's opinion. Consequently, the court finds this fact to be undisputed.

her that he had ascertained that the school needed a teacher qualified to teach Secondary English, not LARS, and that not all of the candidates referred for the LARS position had the necessary qualification. (Doc. No. 96-1, at 27.) McNair replied that, if the position had been erroneously characterized, it would need to be withdrawn and reposted with the correct characterization:

> If the position is 0310 Secondary English and not 0413 Language Arts Reading Specialist, then we would need for you to return the referral list annotating none of the candidates are being selected and that you are not using the certificate. Then we would cancel the recruit/fill RPA for 0413 LARS and have you resubmit a recruit/fill for the correct teaching category 0310 English.

(*Id.*) Vaswani agreed that this is what they would do. (*Id.*) Demetrius Thomas returned the referral list for the LARS position to McNair with a note that no candidate had been selected from this list. (Doc. No. 101 ¶ 22; Doc. No. 96-1, at 14.)

FCHS then prepared a new recruit/fill RPA, RPA number 13JUN7XHEKY015490 ("RPA 15490") for the teaching category of 0310 Secondary English. (*See* McNair Agency Decl., Doc. No. 96-1, at 31.) Upon receipt of RPA 15490, a referral list of candidates qualified to teach 0310 English was generated and sent to the school on July 2, 2013. (*Id.*) While there is no evidence in the record that the plaintiff actually received an EAS-generated notice that she had been referred for this position, Demetrius Thomas sent at least two emails to the plaintiff, informing her that he had tried to reach her by telephone to let her know that the school had had "to repost the [English] position with the correct certification title" and that the plaintiff's name was still on the list of candidates with the appropriate certification. (July 2, 2013 Email, Doc. No. 96-1, at 6.) He asked her to return his call at her earliest convenience to schedule an interview for the reposted position. (*Id.*) Although the plaintiff appears generally to be confused about the fact that the LARS position was reposted as a Secondary English position under RPA 15490, she does not dispute that Demetrius Thomas reached out to her to inform her that the position had, in

fact, been reposted and to invite her for another interview. (Doc. No. 101 ¶ 25.) She does not dispute that she was on the referral list as an available candidate and that she was interviewed for the position. (*Id.* ¶¶ 26, 28.) Demetrius Thomas and Wendy Thomas conducted the interviews, because Vaswani was transitioning to a new job. (*Id.* ¶ 29.)

After conducting the interviews, Demetrius Thomas selected his top three candidates from the referral list and sent the referral sheet with his selections to McNair at HR. (*Id.* ¶ 30; Doc. No. 96-1, at 7–10.) Bonnie Cameron was his first choice. Although the plaintiff was qualified to teach Secondary English, she was not among the top three candidates. On July 11, 2013, the Certification and Licensure Unit certified that Cameron was qualified to teach 0310 Secondary English. (Doc. No. 96-2, at 2.) Cameron accepted the job offer and was appointed, effective July 31, 2013, to the position of Teacher of Secondary English at FCHS. (Doc. No. 96-1, at 31.)

On July 19, 2013, FCHS administrators initiated a third recruit/fill action for a Teacher of 0310 English with Advanced Placement English Literature & Composition ("AP English") under RPA number 13JUL7XHEKY019211 ("RPA 19211"). (Doc. No. 96-1, at 2.) The plaintiff is not certified to teach AP English, nor was she at the time the position was posted. (Doc. No. 101 ¶ 38.) She was not notified by EAS that she had been referred for the position, and she was not interviewed for this position. (Doc. No. 96-1, at 3–5; D. Thomas Agency Decl., Doc. No. 96-1, at 22.) In the end, FCHS did not fill the AP English position for the 2013–2014 school year. Instead, RPA 19211 was reposted in October 2013 as a 0310 English position with no AP endorsement requirement. (D. Thomas Agency Decl., Doc. No. 103-1, at 29.) The plaintiff received an EAS-generated email on October 17, 2013, informing her that she had been "referred to the selecting official along with names of other qualified candidates for the position(s) of 0310

Secondary English at Ft Campbell under Referral List: 13JUL7XHEKY019211." (Doc. No. 103-1, at 2.) The plaintiff was not selected for the position. (D. Thomas Agency Decl., Doc. No. 103-1, at 29.)

The plaintiff filed an Equal Employment Opportunity Complaint of Discrimination ("EEO complaint") with the Diversity Management and Equal Opportunity Office of the DoDEA around September 15, 2013, DD-FY13-123, a month prior to the October 2013 reposting of RPA 19211. (Doc. No. 103-1, at 45–47.) In her EEO complaint, she alleged that she had suffered discrimination on the basis of race, sex, and age and that she had been the target of reprisal for previous EEO activity. She complained generally that her non-selection for the LARS/Secondary English position posted at RPA 12377 was discriminatory and retaliatory. She did not reference RPA 15490 by number, but she noted the cancellation of the LARS position and its relisting as a Secondary English position. Although she acknowledged that she had interviewed for the reposted position as well, she believed the reposting was a "red flag." (*Id.* at 46.) She also specifically stated that she had heard from other candidates who had received a system-generated message telling them that they were candidates for a Secondary English position under RPA 19211, but that she did not receive a message notifying her that she had been referred for that position, even though she was qualified to teach Secondary English. She indicated, based on her conversations with other candidates, that there was some confusion as to whether AP English certification for that job was required. For relief, the plaintiff requested, among other things, the candidate referral lists for the LARS and AP English positions and an explanation of why the LARS posting was cancelled.

The Investigations and Resolutions Directorate of the Defense Civilian Personnel Advisory Service investigated the plaintiff's complaint and issued a Report of Investigation dated March 7, 2014. (Doc. No. 16-6.) Although it acknowledged that the plaintiff discussed three different positions

in her complaint and her testimony, the DoD inexplicably accepted only the plaintiff's claim regarding her non-referral for the AP English position for investigation. (*Id.* at 2 n.2.) The DoD's Final Agency Decision ("FAD"), issued May 23, 2014, likewise only considered the plaintiff's non-referral for the AP English position in July 2013. (FAD, Doc. No. 16-12, at 1.) The DoD concluded, with respect to that non-referral, that the plaintiff did not suffer unlawful discrimination based on race, sex, age, or in reprisal for prior EEO activity. (*Id.* at 6.)

## III.    Procedural Background

Plaintiff Faye Hobson, acting *pro se*, instituted this lawsuit on July 25, 2014 by filing a Verified Complaint in this court, asserting claims of "discrimination and retaliation" in employment, in violation of Title VII of the Civil Rights Act of 1964, against the Secretary of the Department of Defense in his official capacity. (Doc. No. 1.) Because she proceeds *pro se*, the court construes her pleadings and legal briefs liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The plaintiff alleges in the Verified Complaint that she fully exhausted her claims, referencing DD-FY13-123. However, most of the facts alleged with any specificity in the Verified Complaint concern events that took place in 2009, when an offer extended to the plaintiff to teach at the Daegu American School in South Korea was subsequently rescinded. Otherwise, she alleges very generally that she applied for more than 50 positions at FCHS between 2007 and the time she filed her Verified Complaint, was interviewed for only two of them, and had not been offered any position at FCHS. She alleges that "the actions of the defendants are in violation of Title VII." (Verified Compl. ¶ 16.)

In September 2015, the court granted in part the defendant's Motion to Dismiss (treated as a motion for summary judgment), dismissing all claims in the Verified Complaint that were not exhausted in the plaintiff's most recent EEO proceeding, DD-FY13-123. (Doc. No. 31.) The

dismissal pertained to any claims related to her applications for positions at FCHS other than those exhausted in DD-FY13-123 and any claim related to the withdrawal of the job offer at the Daegu American School in 2009.

The EEO complaint alleged discrimination on the basis of race, gender, and age, as well as retaliation for having previously filed EEO complaints. The Verified Complaint purported to state claims for both discrimination and retaliation, but it did not include specific facts supporting claims of discrimination, as opposed to retaliation. In the course of discovery and in her responses to the defendant's currently pending Motion for Summary Judgment, the plaintiff has clarified that she is alleging that DoDEA officials "discriminated against her on the basis of retaliation/reprisal" and that her "claim of discrimination is based on her [having] previous[ly] engaged [in] protected activities." (Pl.'s Resp. Opp. M. Summ. J., Doc. No. 103, at 2.) Specifically, she claims that federal officials retaliated against her because of her prior EEO and whistleblowing activity by refusing to refer or select her for the jobs posted at RPAs 12377, 15490, and 19211. The court therefore does not construe the complaint as asserting claims of discrimination on the basis of race, gender, or age.

After discovery was completed, the defendant filed his Motion for Summary Judgment. The motion specifically addresses the plaintiff's allegations that the cancellation of RPA 12377 for the 0413 LARS position was retaliatory; that her non-selection for the 0310 Secondary English position posted at 15490 was retaliatory; and that her non-referral for the 0310 Secondary English Position with AP endorsement posted in July 2013 under RPA 12911 was retaliatory. (Doc. No. 96.) The motion does not acknowledge—and therefore does not seek dismissal of—any claim related to the plaintiff's non-selection for RPA 12911 as reposted in October 2013 without the AP requirement. The plaintiff's response suggests that the plaintiff

remains confused about the basic timeline of events, but she objects generally to summary judgment and has attempted to show that factual disputes preclude judgment as a matter of law.

In her R&R addressing the motion, the magistrate judge specifically concluded that: (1) the defendant is entitled to summary judgment on all claims arising from the plaintiff's non-selection for the LARS position, RPA 12377, because the plaintiff did not suffer an adverse employment action; (2) the defendant is entitled to summary judgment on the claims arising from the plaintiff's non-selection for the reposted Secondary English position, RPA 15490, because the plaintiff cannot show that the defendant's proffered reason for hiring Dr. Bonnie Cameron instead of the plaintiff was pretextual; and (3) the defendant is entitled to summary judgment regarding the plaintiff's non-referral for the AP English position because the plaintiff cannot establish a causal relationship between her protected activity and the non-hiring and, alternatively, cannot show that the defendant's proffered reason for its action was pretextual. (Doc. No. 117.)

The plaintiff filed her timely Written Objections (Doc. No. 122), accompanied by 212 pages of exhibits (Doc. No. 123), the plaintiff's Declaration (Doc. No. 124), and a Notice outlining the entire procedural history of this action (Doc. No. 125). The defendant responded to the plaintiff's objections (Doc. No. 137), and the plaintiff filed a reply (Doc. No. 140).

## IV.    Discussion

### A.    Objections to Findings of Fact

The plaintiff asserts that the R&R is "extremely premature," since Magistrate Judge Alistair Newbern had only been assigned to the case for three and one-half months at the time the R&R was issued. (Doc. No. 122, at 2.) To the extent that this assertion constitutes an objection, it is overruled. The magistrate judge's ruling was based on the written record, and three and one-half months was more than enough time to familiarize herself with the record.

The plaintiff also apparently misapprehends the purpose of a summary judgment motion.

At this juncture, discovery should be completed, and the plaintiff has the opportunity to present to the court any evidence she intends to present at trial in order to show that there are material factual disputes that must be resolved by a jury. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ; or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute. . . ."). A failure to provide evidentiary support for a factual assertion or to show that the fact is material may result in the granting of summary judgment for the opposing party.

Second, the plaintiff's Written Objections include a paragraph by paragraph rebuttal to the magistrate judge's findings of fact, which the court construes as objections to the factual findings. Insofar as the plaintiff's objections are based on her contention that the magistrate judge's factual findings are insufficiently detailed or omit facts the plaintiff believes to be material, such objections are overruled. The magistrate judge's factual summary, like the one above, references the facts in the record that are germane to the resolution of the plaintiff's legal claims. Matters that pre- or post-date the events at issue, or that are simply not relevant, do not need to be described in detail. Thus, while the questions of whether the plaintiff engaged in protected activity and whether those persons involved in hiring decisions were aware of her prior protected activity are relevant to the plaintiff's ability to state a prima facie case of retaliation, the precise number and timing of the plaintiff's other EEO complaints and her applications for jobs that are not the subject of the EEO complaint that underlies this lawsuit are not. Nor is the question of whether the plaintiff qualified as a "whistleblower" under the Whistleblower Protection Act. This is because, for purposes of the defendant's Motion for Summary Judgment, it is undisputed that the plaintiff engaged in activity protected by Title VII and that the

individuals making hiring decisions were aware of the plaintiff's prior protected activity.

Finally, the plaintiff also objects that the magistrate judge did not take into consideration the "additional supplemental information submitted by Plaintiff on October 11, 2016." (Doc. No. 122, at 17.) The plaintiff apparently is referring to a document titled "Additional Information as it Relates to Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Motion to Strike."[2] (Doc. No. 107.) In this document, the plaintiff incorporates additional "facts" that she allegedly did not have in her possession at the time she responded to the defendant's Statement of Undisputed Facts. These facts concern a Merit Systems Protection Board ("MSPB") Initial Decision that the plaintiff allegedly received on September 29, 2016. The plaintiff states that this decision concerned a case similar to the one now before this court in that it involved "discrimination in the form of retaliation/reprisal and the adverse employment action is non-selections for English position at Fort Campbell Schools." (Doc. No. 107, at 1.)

The magistrate judge did not err in failing to incorporate these Additional Facts and exhibits into her findings of fact, for many reasons. The most important of these is that the court already dismissed all claims other than those addressed in EEO complaint DD-FY13-123. The information the plaintiff seeks to introduce is either relevant only to already-dismissed claims, [3]

---

[2] Although the plaintiff refers to a motion to strike in each of her documents responding to the Motion for Summary Judgment, there is no pending motion to strike.

[3] Among other documents attached to the plaintiff's Additional Information is one that plaintiff refers to as a "smoking gun": the January 21, 2016 Witness Affidavit prepared by Keith Hensen, formerly Principal of Daegu American School in Korea, for use in EEO proceeding DD-FY12-124, concerning events that took place in 2009. (Doc. No. 107, at 9–14.) According to Hensen's affidavit and other documents provided by the plaintiff, Hensen was strongly encouraged by DoDEA human resources administrators not to offer a job at the Daegu School to the plaintiff for the 2009–2010 school year; that, when he did so anyway, his decision was overridden by HR; and that the reason given for the revocation of the job offer that had previously been extended to the plaintiff was pretextual. However, there is no indication in the record that the individuals involved with that decision were involved in the decisions not to hire the plaintiff at FCHS.

is not in admissible form,[4] or is redundant.

The court therefore overrules the plaintiff's objection to the magistrate judge's failure to consider the plaintiff's Additional Information and attached exhibits (Doc. Nos. 107 & 107-1.)

## B. Objections to Legal Conclusions

### 1. The LARS Position, RPA 12377

The plaintiff insists that the defendant's decision to cancel the posting for the 0413 LARS position, RPA 12377, was unnecessary, because she was qualified to teach a LARS class. She asserts that the cancellation was specifically designed to circumvent selecting her for this position. She objects to the magistrate judge's recommendation that the claim be dismissed on a variety of grounds, all of which will be overruled.

The undisputed facts show that RPA 12377 was cancelled because it was submitted with the wrong qualifications. No one was selected to fill the position, and, after it was cancelled, it was immediately reposted as a vacancy for 0310 Secondary English under RPA 15490. The plaintiff was qualified for this position as well; she was referred for the position and subsequently interviewed, as discussed below.

An essential element of any claim of retaliation in the employment context is the showing of an adverse action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 68 (2006) (Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm"; an employer's adverse action against a plaintiff must be "materially adverse," meaning that "it well might have dissuaded a reasonable worker from

---

[4] While statements made by Demetrius Thomas to the plaintiff might be admissible under Rule 801(d)(2)(D) of the Federal Rules of Evidence as an admission by a party-opponent, the plaintiff's own statement about what Thomas told her would need to be in the form of a sworn affidavit or declaration under penalty of perjury to be admissible in the context of a motion for summary judgment. Fed. R. Civ. P. 56(c)(1).

making or supporting a charge of discrimination."). Here, the plaintiff cannot establish that she suffered an adverse action related to the withdrawal of RPA 12377, because the withdrawn RPA was immediately replaced by RPA 15490, for which the plaintiff was again referred and interviewed, putting her back in *exactly the same position* she would have been in if RPA 12377 had not been cancelled.

Because the plaintiff was immediately placed in the same position with respect to RPA 15490 in which she had been with respect to RPA 12377, she cannot establish that she suffered a materially adverse action. The court will therefore overrule her objections and accept the magistrate judge's recommendation that the defendant be awarded summary judgment on the plaintiff's retaliation claim arising from her non-selection for the LARS position posted at RPA 12377.

### 2. *0310 Secondary English, RPA 15490*

#### a. Discrimination

In her Written Objections, the plaintiff argues that she states a prima facie case of discrimination based on disparate treatment, as distinct from her claim of retaliation for engaging in protected activity. The magistrate judge did not expressly address such a claim, because the parties did not address a discrimination claim in their summary judgment filings. The court has already found that the plaintiff did not expressly allege facts supporting a discrimination claim in her Verified Complaint and, in subsequent pleadings, expressly disavowed intent to bring any such claim. For that reason alone, the plaintiff's objection to dismissal of a putative discrimination claim must be rejected.

Even if that were not the case, it is apparently undisputed that the person hired instead of plaintiff, Bonnie Cameron, is an African American woman who is several years older than the

plaintiff. (*See* FAD, Doc. No. 16-12, at 3.) In other words, Cameron is a member of all the same protected classes as the plaintiff. One of the essential elements of a discrimination claim based upon a failure to hire is that a person with qualifications similar to those of the plaintiff but who is not a member of the plaintiff's protected class received the job the plaintiff desired. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562–63 (6th Cir. 2000). For this reason too the claim fails.

Accordingly, the court will overrule any objection to the dismissal of a discrimination claim based on the plaintiff's non-selection for the 0310 Secondary English job posted at RPA 15490.

### b.    Retaliation

As indicated above, the magistrate judge recommends dismissal of the plaintiff's claim that her non-selection for the Secondary English position was retaliatory on the basis that the plaintiff cannot establish that the defendant's proffered reason for hiring Dr. Bonnie Cameron, instead of the plaintiff, was pretextual. The R&R states:

> Defendant does not appear to argue that Hobson has failed to establish a prima facie case of retaliation with regard to the Secondary English position. Instead, Defendant offers a non-discriminatory reason why Hobson was not hired: Dr. Bonnie Cameron was a more qualified candidate. According to Assistant Principal Thomas, Cameron demonstrated more knowledge, skills, and abilities for the position and had a higher level of education and more teaching experience in the subject area than Hobson.

(Doc. No. 117, at 10 (citing Doc. No. 96, at 15; Doc. No. 103-1, at 34–35).) For the reasons set forth below, the court will reject this recommendation as unsupported by the evidence in the record.

Title VII prohibits an employer from "discriminat[ing] against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge . . . or participated in any manner in an

investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). "As with a Title VII discrimination claim, a Title VII retaliation claim can be established 'either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation.'" *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 538 (6th Cir. 2008)). Where a plaintiff seeks to prove her claim with circumstantial evidence, courts apply the burden-shifting inquiry set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Laster*, 746 F.3d at 730.

The first step of *McDonnell Douglas* requires a plaintiff to establish a prima facie case. *Id*. Upon proof of a prima facie case, the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the employment decision. *Id.* If, and only if, the employer provides such a reason, the burden of production then shifts back to the plaintiff to show that defendant's "proffered reason was not the true reason for the employment decision." *Id*.

"Under the *McDonnell Douglas* scheme, [e]stablishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (internal quotation marks and citation omitted). This presumption "places upon the defendant the burden of producing an explanation to rebut the prima facie case." *Id.* That is, the defendant has the burden of producing *admissible evidence* which, "*if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* at 506–07 (citation omitted).

Here, the defendant did not argue in his Motion for Summary Judgment that the plaintiff failed to establish a prima facie case of retaliation. Instead, he argued that the selecting official,

Demetrius Thomas, "determined that Dr. Bonnie Cameron was better qualified than Plaintiff. . . . Regardless of how Plaintiff characterizes the reasons for not selecting her, Plaintiff has failed to establish that she was more qualified than the selectee, Dr. Cameron." (Doc. No. 96, at 15 (citing Doc. No. 96-1, at 21).) In support of that assertion, the defendant cites to an excerpt from Demetrius Thomas's Agency Declaration, in which he testified generally about the hiring process. Specifically, Thomas averred that he and English teacher Wendy Thomas were involved in the selection process and that they determined the criteria for selection based on the Interview Guide provided by the HR office. He described the criteria:

> All candidates were asked the same interview questions, all candidates were asked to provide certifications and up to date references if this information was not found in their applications, all candidates were rated on their responses using the same rubric, and the ratings of interview panel of all candidates were averaged to get a final score.

(Doc. No. 96-1, at 21.) He averred that the interview panel (consisting of Wendy Thomas and himself) drafted the interview questions from the HR Interview Guide, that he did not know the selectees at the time he made the hiring selection/recommendation, and that race was not a factor in his decision not to select the plaintiff for the position. (*Id.*) The defendant has also produced an email that establishes that Cameron, like the plaintiff, was qualified to teach 0310 Secondary English. (Doc. No. 96-2, at 2.) This evidence, however, is not sufficient to establish that the hiring officials selected Cameron because she was more qualified than the plaintiff.

In light of the defendant's failure to point to admissible evidence that established the reasons for selecting Cameron, the magistrate judge relied on the Finalized Referral List that Leslie McNair provided to Demetrius Thomas in connection with RPA 15490. (*See* Doc. No. 117, at 11 (citing (Doc. No. 96-1, at 7–10).) The Referral List shows that the plaintiff had a "Rating" of 27 and a "Competencies" score of 17, while Cameron had a "Rating" of 73 and a

"Competencies" score of 12. (*Id.* at 8.) The court finds that this evidence, even in conjunction with Demetrius Thomas's referenced statement, above, is not sufficient to establish that the defendant selected Cameron because she was more qualified than the plaintiff. The defendant has not pointed to admissible evidence in the record regarding how the "Ratings" were compiled or calculated, nor has the defendant pointed to any admissible evidence establishing that Demetrius Thomas and Wendy Thomas relied upon the Ratings in making their hiring selection.

The magistrate judge also referenced an excerpt from the administrative record included among the exhibits *provided by the plaintiff* in her opposition to summary judgment, which states:

> Dr. Bonnie Cameron was selected for the English position. During the interview process, Dr. Cameron demonstrated more knowledge, skills and abilities for the position than Ms. Hobson and the other candidates. For example, Dr. Cameron possessed a higher level of education and more teaching experience in the desired subject area than Ms. Hobson.

(Doc. No. 103-1, at 35.) This statement is contained in what appears to be an unsworn summary of various witness's testimony. While the statement may well be true, it consists of inadmissible hearsay that the court may not consider in ruling on a motion for summary judgment.

Finally, the plaintiff's exhibit also includes what appears to be an excerpt of Demetrius Thomas's agency questionnaire, in which he states that his selection decision for the position posted at RPA 12377 was based on "candidate ratings during the interview process" and that "[t]he candidate selected for the English position had the best ratings during the interview process." (Doc. No. 103-1, at 30.) Even assuming that the excerpted statement is part of a sworn declaration, the court finds, particularly in light of the reference to RPA 12377 (instead of RPA 15490) that it is too vague and lacking in context to constitute evidence to support the defendant's stated rationale for offering the job posted at RPA 15490 to Bonnie Cameron instead

of to the plaintiff.

Again, the defendant does not argue that the plaintiff has failed to establish a prima facie case of retaliation with respect to this hiring decision. Instead, he argues that the plaintiff has failed to show that she was more qualified than Bonnie Cameron. The burden, however, was not on the plaintiff to make such a showing. The question is whether *the defendant* has shown that Bonnie Cameron was more qualified than the plaintiff. In that regard, the defendant has simply failed to present admissible evidence establishing Cameron's qualifications (other than showing she, like the plaintiff, was qualified to teach Secondary English) or the criteria used to select her instead of the plaintiff.

The defendant's Motion for Summary Judgment on the plaintiff's claim relating to her non-selection for the Secondary English position, posted at RPA 15490 in July 2013, will therefore be denied.

### 3. *RPA 19211*

#### a. 0310 AP English Position Posted in July 2013

The magistrate judge recommends summary judgment on the plaintiff's claims related to her non-referral for the AP English position on the basis that (1) the plaintiff cannot establish a causal connection between her non-referral and her protected activity for purposes of her prima facie case of retaliation; and (2) even if she could establish causation, she cannot show that the defendant's proffered reason for her non-referral is pretextual. The plaintiff objects to both of these conclusions. The court overrules the plaintiff's objections on the basis that the plaintiff cannot establish pretext.

The AP English position was initially posted in July 2013 under RPA 19211. The plaintiff, who is not now, and was not then, certified to teach AP English, was not referred

through EAS for the position in July 2013. The plaintiff admits that she was not certified to teach AP English, and she specifically stated in her EEO complaint that she was not referred for the position when it was posted in July 2013. (*See* Doc. No. 16-13, at 2 ("Other applicants received the system generated message that stated they were candidates for the position(s) of 0310 Secondary English at FCHS under Referral List: 13JUL7XHEKY019211. I never received this message.").)

As explained above, referrals for any particular job were generated automatically by EAS based on the criteria that potential candidates entered into the system when setting up their personal profiles and applications. The plaintiff entered her profile and applied for DoDEA jobs through the EAS. Through that system, her name was automatically referred for positions that met her expressed preferences and for which she met the qualifications, as it was for RPAs 12377 and 15490 and, as discussed below, RPA 12911 when it was reposted as simply a Secondary English position with no AP endorsement required. The defendant has offered proof that the plaintiff was not referred simply because the qualifications she provided to EAS did not match the requirements for the job as originally posted by the school's administrators. In other words, because her qualifications did not match the job requirements, the plaintiff did not technically even apply for the position. (*See* McNair Agency Decl., Doc. No. 103-1, at 98 ("Ms. Hobson did not apply for Advanced Placement English Literature & Composition.").)

The plaintiff has not offered any evidence suggesting that the proffered reason for the non-referral was pretextual. She argues, based only on anecdotal, inadmissible evidence, that other candidates who did not have AP endorsements were referred for the job. The plaintiff has no admissible evidence to support that claim.[5] The defendant is therefore entitled to summary

---

[5] Other information in the record suggests that some of the candidates who were referred

judgment on the plaintiff's claim related to her non-referral for the AP English position in July 2013.

**b.      0310 English Posted in October 2013**

The plaintiff is now seeking to articulate a retaliation claim based on her non-*selection* for the job as it was reposted in October 2013. This claim was not expressly articulated in the EEO complaint or addressed in the defendant's summary judgment filings. The plaintiff addressed it, somewhat obliquely, in her Response in Opposition to the Motion for Summary Judgment by referencing the position and her confusion about who exactly was hired to fill the job after it was reposted in October 2013. (*See* Pl.'s Mem. Opp. M. Summ. J., Doc. No. 103, at 3–7 (stating that she had received an EAS notification for RPA 19211 in October 2013 but had not received one in July; arguing that the Agency acted improperly in only focusing on the one position for which she was not referred (the AP English position); documenting confusion about whether the July posting actually required AP, since a friend who was not certified to teach AP had been referred for the job; noting that she had heard that Charlotte Windom may have been selected to fill RPA 19211 in October; and complaining generally that her repeated non-selection for positions at FCHS was retaliatory).)[6] It appears that the defendant has taken the position that this claim was waived by not being raised in the EEO complaint.

Under the "expected scope of investigation test," a plaintiff must allege sufficient facts in

for the job may have self-reported being qualified to teach an AP class when they actually were not. (*See, e.g.*, FAD, Doc. No. 16-12, at 5 ("The Assistant Principal interviewed candidates on the referral list, but the applicants tentatively selected off that list either declined the offer or were unable to provide proof that they had AP English certification.").)

[6] Insofar as the plaintiff is attempting to state an age discrimination claim based on her non-selection for the position, the court rejects that attempt for the reason set forth above: the plaintiff has expressly disavowed an intent to bring a claim based on age, race, or sex discrimination. Moreover, the plaintiff has not offered evidence to support a prima facie case of age discrimination.

her EEOC complaint to put the EEOC on notice of other claims not specifically mentioned. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). "[W]here facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002) (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)). The exhaustion requirement "is not meant to be overly rigid, nor should it result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading." *Scott v. Eastman Chem. Co.*, 275 F. App'x. 466, 471 (6th Cir. 2008) (internal quotation marks and citations omitted). Furthermore "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Id.* (internal quotation marks and citation omitted). A plaintiff is not to be penalized for the EEOC's failure to conduct a broader investigation. *Id.* (citation omitted).

Here, the plaintiff filed her EEO complaint in September 2013 regarding her July 2013 non-referral for RPA 19211. The same position was reposted just a month later, in October 2013, without the AP requirement but under the same RPA number. The plaintiff was referred but not selected for the position. Although the plaintiff did not expressly exhaust this claim in her EEO proceeding or amend her complaint to raise it, it is at least arguable that the scope of the EEO investigation should reasonably have been expected to expand to that non-selection, particularly in light of the fact that it was the same position under the same RPA number, and the reposting took place just a month after the plaintiff filed her EEO complaint. In the absence of argumentation by the parties on this issue, the court does not find that the claim is barred as unexhausted.

Moreover, the claim is covered by the scope of the Verified Complaint, which alleges that the plaintiff had applied and been rejected for over fifty positions at FCHS, and it was not subject to dismissal in the ruling on the defendant's Motion to Dismiss, because the claims that were dismissed were those outside the scope of the EEO investigation. In sum, there appears to be no reason why the defendant should not have addressed this claim in the Motion for Summary Judgment.

Moreover, it appears that the plaintiff has alleged facts supporting a prima facie retaliation claim related to the October 2013 non-selection. To establish a prima facie case of retaliation, the plaintiff must show: (1) she engaged in protected activity; (2) the exercise of protected rights was known to the officials engaged in the employment decision; (3) the employer took an adverse employment action against the plaintiff, and (4) there was a causal connection between the protected activity and the adverse action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). There is no dispute that the plaintiff engaged in protected activity, that the hiring officials were aware that she had engaged in protected activity by filing numerous EEO complaints, and that an adverse employment action occurred when the plaintiff was not hired for a position for which she applied and was qualified. The necessary causal connection "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Although the magistrate judge found insufficient evidence of causation generally, based on the timing of events in connection with the plaintiff's non-selection for the Secondary English position posted at RPA 15490, the court finds that the temporal relationship between the plaintiff's numerous EEO filings and the adverse employment action is not so

distant that summary judgment is warranted in the absence of better factual development and argument by the parties.[7]

The defendant's Motion for Summary Judgment cannot be construed as seeking dismissal of this claim. The court therefore does not grant summary judgment on this claim.

## V.    Conclusion

For the reasons set forth herein, the court will reject the magistrate judge's recommendation that summary judgment be granted in favor of the defendant on the plaintiff's retaliation claim related to her non-selection for the 0310 Secondary English position posted at RPA 15490. With respect to that claim, the defendant's Motion for Summary Judgment will be denied. Further, although neither the magistrate judge nor the defendant addresses this claim, the court finds that the plaintiff has stated a claim based on her non-selection for the 0310 Secondary English position posted in October 2013 under RPA 19211, and that claim also survives summary judgment.

In all other respects, the plaintiff's objections are without merit and will be overruled. The defendant's Motion for Summary Judgment as the other claims asserted in the Verified Complaint will be granted.

An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge

---

[7] The plaintiff alludes to facts in her possession, such as a conversation with Demetrius Thomas, but she has not stated exactly what that evidence is or presented it in a form that would be admissible as an admission of a party opponent under Rule 801(d)(2)(D) of the Federal Rules of Evidence. And the defendant has not argued that the temporal relationship between the plaintiff's EEO filings and the various adverse employment actions is too tenuous to support an inference of causation.